441 A.2d 1288

Roger E. BUCHANAN and Dorothy Buchanan, et al.

v.

CENTURY FEDERAL SAVINGS & LOAN ASSOCIATION, et al.

Appeal of MT. LEBANON FEDERAL SAVINGS & LOAN ASSOCIATION.

Appeal of Roger E. BUCHANAN and Dorothy Buchanan, et al.

Superior Court of Pennsylvania.

Argued Aug. 31, 1981.

Filed Feb. 19, 1982.

See also, 295 Pa.Super. 384, 441 A.2d 1285.

Michael P. Malakoff, Pittsburgh, for appellants (at No. 145) and for appellees (at No. 237).

Joan Feldman, Pittsburgh, for appellant (at No. 237) and for appellee (at No. 145).

Before WICKERSHAM, WIEAND and BECK, JJ.

BECK, Judge:

This appeal arises from the interpretation of a settlement agreement which settled an action by classes of mortgagors [1]

1. Although the original class included all mortgagors, appellees herein represent only a class of mortgagors whose mortgage loans do *not* exceed eighty percent (80%) of the appraised value of the mortgaged

against several mortgagee banks in both the federal and state courts. The agreement was executed by all parties on January 22, 1976. By its terms, the settlement agreement was subject to, and contingent upon, court approval in both the state and federal actions. The hearing judge found as a fact that it was normal to, and the parties did in fact, contemplate that court approval would take a lengthy period of time. Final court approval was forthcoming on April 19, 1979.[2]

The portion of the agreement giving rise to the controversy necessitating a court ruling from which this appeal is taken reads as follows:

§ 3.03. Beginning on the date of final approval of this Agreement, but retroactive to January 1, 1976, the Defendants either:

(a) Shall pay at least two (2) percent interest per annum to their Residential Mortgagors on sums paid to a particular Defendant equivalent to one-twelfth the annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges;

(b) Shall credit such advance payments against the principal balances on such mortgage loans; or

(c) Shall grant, by writing separate from the mortgage and bond or note, such mortgagors the option either of paying their annual hazard insurance premiums, annual real estate taxes and/or assessments or other charges themselves, or of making such payments equivalent to one-twelfth of such amounts each month

premises. Therefore, the term "mortgagors" as used hereinafter refers only to such mortgagors, and this appeal and opinion do not relate in any way to mortgagors whose mortgages exceed eighty percent (80%) of the appraised value.

**2.** On October 20, 1978, this court remanded the case to the lower court for approval of settlement: *Buchanan v. Century Federal Savings & Loan Association*, 259 Pa.Super. 37, 393 A.2d 704 (1978). Final approval was then dependent upon approval of the settlement in the companion action in the federal court, *Stavrides v. Mellon Bank, N. A.*, Civil Action No. 72–242 in the *United States District Court for the Western District of Pennsylvania*.

to Defendants, in which case, no interest need be paid by Defendants on such payments.

If interest is to be paid by a Defendant under Subsection (a) herein, it shall be calculated in a manner no less favorable to Plaintiffs than 2 percent simple interest, on the average of the month-end escrow balances, paid or credited annually.

\*　　\*　　\*　　\*　　\*　　\*

Prior to January 22, 1976, language contained in the Mortgage Applications utilized by appellant Mt. Lebanon offered the prospective mortgagor [3] the option of maintaining an escrow with Mt. Lebanon or paying insurance, taxes, etc. directly.

Following final court approval of the settlement, in November, 1979, Mt. Lebanon sent a letter to its mortgagors which stated, in relevant part:

"[W]e enclose herewith an agreement which is to be executed by the borrowers ... advising [Mt. Lebanon] whether you wish to pay your own taxes and insurance premiums or whether you wish to pay them through [Mt. Lebanon] without any interest to you .... Your failure to [return the agreement] will be considered your authorization to continue your escrow account with no payment of interest.

3. At the bottom of the second, and signature, page of its form headed "Application for Loan," the following language appears:

It is understood and agreed that Fire and Extended Coverage or Homeowners Coverage Insurance will be maintained on the mortgaged premises in an amount at least equal to the amount of the mortgage so long as the loan is in force. I further understand and agree that the total monthly payments shall ... (A) include a monthly pro-ration of the estimated costs of real estate taxes, any assessments and insurance premiums to be deposited in a non-interest bearing account or ... (B) shall not include an escrow account, and that I will assume the responsibility for the payment of taxes and insurance when they become due, and submit receipts to the Association. I have initialled my choice of methods and understand the procedure.

The affidavits submitted by Mt. Lebanon do not supply information as to what percentage of these forms were actually initialled by the prospective mortgagor.

"The total funds in your tax and insurance escrow ... will either be applied to the principal balance of your mortgage or refunded to you if you elect to pay your own taxes, when we receive the enclosed agreement."

On January 7, 1981, the class representatives filed a Motion to Enforce Settlement Agreement with regard to Mt. Lebanon, alleging that Mt. Lebanon had selected the option under Section 3.03(c) in 1979 but had failed to apply it retroactively by failure to pay escrowing mortgagors two percent (2%) interest per annum on escrows held during the period January 1, 1976 to the date it offered its mortgagors an option as to escrow. The motion requested that the court order Mt. Lebanon to pay two percent (2%) interest on such escrows held during the period January 1, 1976 to April 19, 1979 and other relief.

On January 23, 1981 Judge Silvestri entered an order which granted such relief in part and denied it in part. The order further required Mt. Lebanon to resubmit an election of options to all of its mortgagors effective November 1, 1979 in terms consistent with the Settlement Agreement. These cross-appeals followed.

In a related appeal, No. 837 Pittsburgh, 1980, Appeal of Equibank in the same action, this court has this date determined that payment of two percent (2%) per annum based upon monthly escrow balances is the means, within the intention of the agreement, whereby mortgagors escrowing funds were to be accorded retroactivity in the option to discontinue such escrows. Pursuant to the Agreement, therefore, Mt. Lebanon would owe such interest to its escrowing mortgagors on balances held during the period January 1, 1976 to the date it granted the option set forth in Section 3.03(c) of the Agreement, that date being determined below to vary with the facts, but being no earlier than November 1, 1979.

The trial judge in the instant case held that the language contained in Mortgage Applications utilized by Mt. Lebanon prior to the settlement constituted sufficient compliance to meet the requirements of the retroactivity provision. The

trial judge held that the language contained in the letter sent by Mt. Lebanon November 1, 1979 did not meet the requirements of the Settlement Agreement at Section 3.03(c). Accordingly, Judge Silvestri ruled that *no* interest need be paid for the period January 22, 1976 to November 1, 1979, (from which mortgagors appeal) but that interest was required to be paid to escrowing mortgagors for the period November 1, 1979 to such date as Mt. Lebanon resubmitted the option in appropriate terms (from which Mt. Lebanon appeals).

The parties' briefs reflect general agreement as to the facts and as to the applicable law. Citing the same cases, all agree as do we that the principles of contract construction are applicable to interpretation of this settlement agreement: *United States v. I.T.T. Continental Baking Co.*, 420 U.S. 223, 95 S.Ct. 926, 43 L.Ed.2d 148 (1975); *Florida Educational Association v. Atkinson*, 481 F.2d 662 (5th Cir. 1973).

"If the language of the contract is unambiguous and susceptible of only one interpretation, a court will determine the parties' intention on the basis of the clear wording of the contract. If the language of the contract is ambiguous and susceptible of two interpretations, then the court will adopt the interpretation which under all circumstances, ascribes the most reasonable, probable and natural conduct of the parties, bearing in mind the objects manifestly to be accomplished."

*O'Farrell v. Steel City Piping Co.*, 266 Pa.Super. 219, 403 A.2d 1319, 1324 (1978). As pointed out in the related Appeal of Equibank, the language of the Settlement Agreement herein is ambiguous as to the means for according retroactivity in the case of those lenders selecting the Section 3.03(c) means of performing their obligations. The means of exercising the option, however, was set forth in clear and unambiguous language in the "Second Amendment to Settlement Agreement" executed by the parties subsequent to January 1, 1976 and approved as part of the Settlement Agreement. The relevant amendment language is as follows:

"The exercise of such option by the mortgagor shall be by a written signed statement electing one or the other method of payment, which statement shall not be given to the lender until after the lender has issued a written commitment to make the loan that does not contain any requirement of such monthly payments.... [P]romptly after an election by a mortgagor to make such annual payments himself the lender shall remit to the mortgagor the balance then held in his escrow account .... In any case where an election to continue monthly payments has not been mailed to or received by the lender within thirty (30) days after furnishing [election form and return envelope], the lender shall promptly remit to any mortgagor not in default the balance then held in his escrow account."

It is therefore clear that at any time during the period January 1, 1976 to date during which Mt. Lebanon offered its mortgagors an election in the terms above described, it would be in compliance with the agreement and therefore not liable for payment of any interest.

## MORTGAGORS WHO ESCROWED PAYMENTS WITH MT. LEBANON FROM JANUARY 1, 1976 to NOVEMBER 1, 1979

Under the facts as set forth in Affidavits of Mt. Lebanon and taken as true since they are undisputed by the class representatives, those mortgagors who did in fact escrow payments with Mt. Lebanon prior to the sending of the November 1, 1979 letter, and from as early as February, 1973, did so based upon the "option" expressly set forth in the Mortgage Application set forth above at note 2. Thus, such mortgagors would have had to have either committed themselves to escrowing payments prior to the issuance of a mortgage commitment, thus resulting in a commitment to make the loan that did contain a requirement of monthly escrow payments, or else would have remained silent as to an election, which under the terms of the Settlement Agreement should have resulted in *no* escrow being collected. The parties herein were settling lawsuits which challenged the

means of escrow collection and had the conduct of Mt. Lebanon in utilizing such language in its Mortgage Applications been undisputedly in accordance with the result to be achieved by the Settlement Agreement, it could readily have executed a separate Settlement Agreement approving such means of offering its mortgagors an election. Furthermore, any ruling that the Mortgage Application language satisfied the terms of Section 3.03(c) would, in effect, discharge Mt. Lebanon from any obligation whatsoever under the Settlement Agreement. The intention of the parties demonstrated by the agreement was that 2% interest be paid to all escrowees until written option in the form set forth in the agreement was executed or until escrow was terminated. We therefore reverse the ruling of the lower court as to the period January 1, 1976 to November 1, 1979 and hold that, as to those mortgagors actually escrowing funds with Mt. Lebanon during that period, Mt. Lebanon was not in compliance with the terms of the Settlement Agreement, and did not perform retroactively as required by Section 3.03.

## MORTGAGORS WHO ESCROWED PAYMENTS WITH MT. LEBANON FROM NOVEMBER 1, 1979

The lower court held that the November 1, 1979 letter sent by Mt. Lebanon to its mortgagors did not comply with the requirements of the Settlement Agreement in that escrow requirements were continued as to those mortgagors who did not return an election form. We agree and further note that the letter does not state that escrow balances will be promptly remitted to any mortgagor electing not to escrow, as required by the Settlement Agreement. However, the requirement by the lower court that election forms in terms complying with the Settlement Agreement be resubmitted to *all* mortgagors, whether or not they have maintained an escrow account, is extending a remedy beyond the scope of the default. The intention of the Settlement Agreement was to extend a remedy to those maintaining escrow accounts with the defendant lending institutions within the limits agreed to by the lending institutions in

order to settle litigation. Those not maintaining escrow accounts would cease to be members of the class to whom a remedy need be extended. The plaintiff class consisted only of those who "established or maintained"[4] escrow accounts in connection with their mortgage.

## SUMMARY

Under the terms of the Settlement Agreement, the defendant lending institutions, including Mt. Lebanon, were to perform their obligations under that agreement on the date court approval became final, being 30 days after April 19, 1979, no appeal having been filed. Under the terms of Section 3.03, performance under that section is required retroactively to January 1, 1976. As of November 1, 1979, Mt. Lebanon had not performed its obligation in any manner. Mt. Lebanon has represented that at all relevant times its intention was to select the Section 3.03(c) option to give its mortgagors a right of election to discontinue escrow payments and balances in accordance with the Settlement Agreement. Accordingly, as of May 19, 1979, Mt. Lebanon owed its mortgagors of record from January 1, 1976 a two percent per annum payment on the monthly balances in escrow accounts and the delivery of an election form in the terms set forth in the Second Amendment to Settlement Agreement. Thirty days after May 19, 1979, Mt. Lebanon owed all those mortgagors who did not return election forms a prompt remittance of balances in escrow accounts and termination of collection of escrow payments. Therefore, from June 18, 1979 Mt. Lebanon has been in default under the terms of the Settlement Agreement and is subject to six percent (6%) interest payable on the two percent (2%) interest owed and payable on all escrow balances which were the result of the failure of a mortgagor to make an election either to escrow payments or to discontinue escrow payments. As to those mortgagors who have returned an executed election, from and after November 1, 1979, interest at the legal rate on such escrow balances is due only to the

4. Section 1.02 Settlement Agreement.

date upon which Mt. Lebanon complied with such election. Mt. Lebanon is required to submit a form for election in the terms set forth in the settlement agreement to all mortgagors (including all those who were mortgagors on May 19, 1979 or thereafter whether or not such mortgagors are presently under any existing mortgage with Mt. Lebanon) who have not made a written election after November 1, 1979.

The order of the lower court is reversed and the case is remanded for the granting of relief in accordance with this opinion.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

During the period prior to court approval of the settlement agreement, Mt. Lebanon Federal Savings and Loan Association gave each mortgagor whose indebtedness did not exceed 80% of the appraised value of the residence pledged as security the choice of maintaining an escrow deposit for real estate taxes and insurance premiums or of paying such taxes and insurance premiums themselves. I agree with the trial judge's opinion that this practice was consistent with the option contained in Section 3.03(c) of the settlement agreement. Therefore, I would not require Mt. Lebanon to pay interest on funds which mortgagors had knowingly and voluntarily elected to pay in escrow to Mt. Lebanon during the pendency of proceedings to obtain court approval of the settlement agreement. It follows that I must respectfully dissent from that portion of the opinion of a majority of this Court which directs Mt. Lebanon to pay interest on such escrowed amounts at the rate of 2% per month.

I agree with the majority that Mt. Lebanon failed to comply strictly with the mandate of the settlement agreement following court approval thereof. Therefore, it was properly ordered to proceed as set forth in the agreement to return escrow deposits and pay interest thereon at the rate of 6% per annum unless mortgagors had directed otherwise in writing. The effect of the court's order, however, should

be limited to those mortgagors whose escrow accounts were continued by the bank without prior, express, written authorization to do so from the mortgagors.